| | |
|---|---|
| JORDAN AKINS,<br><br>        Plaintiff/Claimant,<br><br>v.<br><br>MARTIN O'MALLEY,<br>Commissioner of Social Security,<br><br>        Defendant. | O R D E R |

This matter is before the court on the parties' briefs filed pursuant to the Supplemental Rules for Social Security Actions. [DE-15, -17]. Claimant Jordan Akins ("Claimant") filed this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the denial of his application for a period of disability and Disability Insurance Benefits ("DIB"). The time for filing responsive briefs has expired, and the matter is ripe for adjudication. Having carefully reviewed the administrative record and the briefs submitted by the parties, the decision of the Commissioner is affirmed.

## I. STATEMENT OF THE CASE

Claimant filed an application for a period of disability and DIB on September 9, 2019, alleging disability beginning November 1, 2014, later amended to October 18, 2019. (R. 10, 212–15, 226). The claim was denied initially and upon reconsideration. (R. 10, 82–114). A hearing before an Administrative Law Judge ("ALJ") was held on June 9, 2022, at which Claimant, represented by counsel, and a vocational expert ("VE") appeared and testified. (R. 10, 45–81). On June 21, 2022, the ALJ issued a decision denying Claimant's request for benefits. (R. 7–34).

On November 9, 2022, the Appeals Council denied Claimant's request for review. (R. 1–6). Claimant then filed a complaint in this court seeking review of the now-final administrative decision.

## II. STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996), *superseded by regulation on other grounds*, 20 C.F.R. § 416.927(d)(2)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997).

## III. DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. § 404.1520 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," i.e., currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the SSA*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995) (citation omitted). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. § 404.1520a(b)–(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. *Id.* § 404.1520a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." *Id.* § 404.1520a(e)(3).

In this case, Claimant alleges the ALJ erred by failing to perform a proper function-by-function evaluation of Plaintiff's ability to sit, stand, and walk when formulating the residual functional capacity ("RFC"). Pl.'s Mem. [DE-15] at 4–12.

3

## IV. ALJ'S FINDINGS

Applying the above-described sequential evaluation process, the ALJ found Claimant "not disabled" as defined in the Act. At step one, the ALJ found Claimant had not engaged in substantial gainful employment since the amended alleged onset date. (R. 13). Next, the ALJ determined Claimant had the severe impairments of dysfunction - major joints (right knee); vascular malformation of right lower extremity; obesity; migraine; sleep apnea; depressive, bipolar and related disorders; anxiety and obsessive compulsive disorders; and PTSD. *Id.* At step three, the ALJ concluded Claimant's impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 13–16). Applying the technique prescribed by the regulations, the ALJ found that Claimant's mental impairments had resulted in a mild limitations in understanding, remembering, or applying information and moderate limitations in adapting or managing oneself, interacting with others, and concentrating, persisting, or maintaining pace. (R. 15–16).

Prior to proceeding to step four, the ALJ assessed Claimant's RFC, finding Claimant had the ability to perform light work[1] with the following additional limitations:

> can only occasionally climb ramps and stairs; never climb ladders, ropes, or scaffolds; frequently balance (as that is defined in the Dictionary of Occupational Titles (DOT)), stoop, and crawl; occasionally kneel and crouch; can have occasional exposure to unprotected heights and moving mechanical parts; can work at most [in] a moderate noise environment; can understand, remember, and carryout instructions by performing simple, routine and repetitive tasks but not at a production rate pace (e.g. assembly line work); can use judgment to make simple work-related decisions; and have frequent interaction with supervisors and

---

[1] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If an individual can perform light work, he or she can also perform sedentary work, unless there are additional limiting factors such as the loss of fine dexterity or the inability to sit for long periods of time. 20 C.F.R. § 404.1567(b).

occasional interaction with coworkers and the public.

(R. 17–27). In making this assessment, the ALJ found Claimant's statements about his symptoms and limitations to be not entirely consistent with the medical and other evidence in the record. (R. 18). At step four, the ALJ concluded Claimant was unable to perform his past relevant work as a rifleman. (R. 27). Nonetheless, at step five, upon considering Claimant's age, education, work experience, and RFC, the ALJ determined Claimant was capable of performing other jobs that exist in significant numbers in the national economy. (R. 28–29).

## V. DISCUSSION

Claimant contends that the medical records support his testimony of greater limitations in sitting and standing than the ALJ accounted for in the RFC, and the ALJ failed to explain how Claimant could sit, stand, or walk for up to six hours in an eight-hour workday based on the evidence of record. Pl.'s Mem. [DE-15] at 4–12. Defendant contends the ALJ sufficiently explained the determination that Claimant could perform a reduced range of light work. Def.'s Mem. [DE-17] at 6–13.

"[T]he residual functional capacity 'assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions' listed in the regulations." *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (quoting S.S.R. 96-8p). The ALJ must provide "a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Id.* (quoting S.S.R. 96-8p). "Only after such a function-by-function analysis may an ALJ express RFC 'in terms of the exertional levels of work.'" *Monroe v. Colvin*, 826 F.3d 176, 179 (4th Cir. 2016) (quoting *Mascio*, 780 F.3d at 636); *see also Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000) (observing

5

that the ALJ "must build an accurate and logical bridge from the evidence to his conclusion"). However, the Fourth Circuit has rejected "a per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis." *Mascio*, 780 F.3d at 636. Rather, the court explained that "[r]emand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." *Id.* (citation omitted).

Claimant testified at the administrative hearing that his average pain was a 7 out of 10, he could only walk about 30–50 feet, and he could only sit for about 20 minutes before needing to walk around. (R. 69, 71). In support of his testimony regarding these limitations, Claimant points to medical evidence of a 2014 right ACL repair and 2017 right ACL revision and a vascular malformation that was diagnosed in October 2019. Pl.'s Br. [DE-15] at 5–9. The ALJ summarized Claimant's relevant hearing testimony regarding his symptoms and limitations but found that the evidence was not consistent with Claimant's alleged loss of functioning. (R. 18).

The ALJ first discussed Claimant's right ACL repair and later revision, as well as his October 2019 report that his knee was swollen, stiff, and felt unstable after a recurrent injury four months prior. (R. 19, 475). However, the ALJ noted that imaging showed no significant change in the ACL and minimal arthritis with some positive findings on examination and an intact gait, and an MRI in January 2020 confirmed an intact ACL graft and meniscal repair. (R. 19, 475–76, 524–26).

The ALJ next discussed Claimant's vascular malformation in the right lower extremity, which ultimately explained his continued pain and swelling. (R. 19–22). The ALJ considered the November 2019 vascular surgery consultation, where Claimant reported pain and swelling in his lower right leg, denied pain with ambulation, and was noted to have symptoms of vascular

6

malformation, including port wine stains, varicose veins, and excessive growth of soft tissue/bones. (R. 20, 533–34). He also considered a November 2019 dermatology follow-up appointment where Claimant reported having pain and swelling in his right lower extremity for years that affected his ability to walk, ointment provided minimal improvement, and on examination his right lower extremity was significantly larger than the left, he had palpable varicosities, and he had scattered violaceous patches and plaques with overlying scale. (R. 20, 531–32). Claimant was assessed with Klippel Trenaunay Syndrome with a combination of capillary malformation, varicosities, and edema, and he was advised to continue use of the ointment for any rash/dermatitis but that it would not improve his underlying condition. *Id.*

Finally, the ALJ discussed Claimant's further treatment for vascular malformation throughout 2020, where Claimant continued to report pain, swelling, and tenderness, which was limiting his physical activity; a right lower extremity venogram showed extensive multifocal venous malformation in the right foot, calf, and possibly distal thigh; and in August 2020, he underwent a successful STS embolization of the distal right lateral leg and thigh venous malformations. (R. 21, 568–70, 588–607). Claimant reported improvement in the treated area but was still symptomatic in other areas of his right lower extremity, and in October and December 2020, he underwent additional STS embolizations of the distal right calf and thigh venous malformations. (R. 22, 328–29, 683–84). Claimant argues that he continued to report soreness and swelling that was worse with standing in February 2021, which is after his date last insured. (R. 790). However, the ALJ cited a March 2021 treatment note indicating Claimant underwent a repeat embolization but with glue, and his skin wound and necrosis healed with treatment. (R. 22, 790–95, 800–04). At a follow up appointment in May 2021, Claimant reported he had overall been well and that his overall pain and swelling had improved. (R. 797).

7

Claimant cites a primary care treatment note from October 2021, arguing that he continued to exhibit nevi with venous malformations, but Claimant reported that the prior intervention site had healed, he was doing well in general and had no particular concerns to address at the visit, he wanted to focus on exercise, staying healthy, and being an active parent, and he would continue care with Duke Vascular as warranted. (R. 748–49). Claimant also cites a treatment note from March 2022, indicating he was experiencing pain with sitting, walking, or standing and had some swelling and discomfort in his right lower extremity. (R. 811–19). However, Claimant's main complaint was low back pain radiating to his leg, which had only started a few weeks prior, well after his December 2020 date last insured, and he rated his pain only a 4 out of 10. *Id.* The court also notes that there are no medical opinions in the record that would support the level of limitation Claimant alleged.

The ALJ determined that Claimant's right lower extremity impairment did not prevent him from performing light work, including standing or walking for up to six hours in an eight-hour workday, because the embolization treatments ultimately reduced Claimant's pain and swelling and his venous malformations were controlled. (R. 22–23). The court can trace the ALJ's reasoning from the cited evidence to the ALJ's conclusion, which is supported by substantial evidence. (R. 748–49, 790–95, 797, 800–04); *see Watson v. Saul*, No. 5:19-CV-575-D, 2021 WL 262072, at *5 (E.D.N.C. Jan. 4, 2021) (finding no error in the ALJ's failure to perform a function-by-function analysis of the claimant's ability to stand and walk, where he nonetheless discussed the claimant's back and leg pain in sufficient detail to provide for meaningful review and substantial evidence, including improvement with treatment, supported the decision), *adopted by*, 2021 WL 260656 (E.D.N.C. Jan. 26, 2021). Accordingly, the ALJ did not err in formulating the RFC.

## VI. CONCLUSION

For the reasons stated above, the decision of the Commissioner is affirmed.

SO ORDERED, this the 20th day of March, 2024.

Robert B. Jones, Jr.
United States Magistrate Judge